UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LINDA ENGLISH,

        Plaintiff,

                                   CIVIL ACTION NO.  05 CV 71575 DT
   v.

                                   DISTRICT JUDGE MARIANNE O. BATTANI
COMMISSIONER OF
SOCIAL SECURITY,                      MAGISTRATE JUDGE VIRGINIA M. MORGAN

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.     Introduction

This Social Security disability case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated herein, the court recommends that the Commissioner's motion be **GRANTED** and that Plaintiff's motion be **DENIED**.

### II.     Background

Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) on April 10, 2002, alleging a disability onset date of December 4, 2000 (Tr. 52-54) due to recurrent disk herniation, marked endplate reaction, and nerve damage.  (Tr. 59)  Plaintiff was 37 years of age when she filed the application.  Following the initial denial of her claim by the Social Security Administration (Tr. 36-40), Plaintiff requested a hearing before an administrative law judge (ALJ), Peter C. Americanos.  (Tr. 41, 43)  The hearing took place on May 17, 2004.  (Tr. 247-282)  The ALJ denied the claim on October 29, 2004.  (Tr. 11-24)  He determined that "[Plaintiff's] medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4."  (Tr. 23)  The ALJ further

concluded that Plaintiff's allegations regarding her limitations were not fully credited and that Plaintiff had the residual functional capacity (RFC) to perform a significant range of sedentary work[1] notwithstanding her physical limitations.  (Tr. 23-24)  Accordingly, the ALJ found that Plaintiff was not "disabled" within the meaning of the Social Security Act.  (Tr. 24)

Following the ALJ's denial of his application, Plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 8, 9-10)  The Appeals Council denied Plaintiff's request for review on February 25, 2005.  (Tr. 5-7)  The ALJ's decision thus became the final decision of the Commissioner.  On April 2, 2005, Plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the parties have filed cross-motions for summary judgment.  Plaintiff contends in his motion that the ALJ ignored the requirement of 20 C.F.R. § 404.1530(a) requiring that treatment be "prescribed" and that the ALJ's opinion failed to properly consider 20 C.F.R. § 404.1530(c)(3).  The Commissioner contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.

III.    **Legal Standards**

A.  **Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continued period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further, an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity

---

[1] "Sedentary work" is defined in 20 C.F.R. § 404.1567(a) as follows:  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kinds of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he

lives, or whether a specific job vacancy exists for him, or whether he would be hired if he

applied for work.  42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he

is disabled.  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  As discussed

in *Foster*, *Id*. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful
> activity.  Next the claimant must demonstrate that she has a "severe impairment."
> A finding of "disabled" will be made at the third step if the claimant can then
> demonstrate that her impairment meets the durational requirement and "meets or
> equals a listed impairment."  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she is incapable of
> performing work that she has done in the past.  Finally, if the claimant's
> impairment is so severe as to preclude the performance of past work, then other
> factors, including age, education, past work experience, and residual functional
> capacity must be considered to determine if other work can be performed.  The
> burden shifts to the Commissioner at this fifth step to establish the claimant's
> ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> An individual, after any final decision of the Commissioner of Social Security
> made after a hearing to which he was a party, irrespective of the amount in
> controversy, may obtain a review of such decision by a civil action commenced
> within sixty days after the mailing to him of notice of such decision or within
> such further time as the Commissioner of Social Security may allow.

Judicial review under s 405(g) is limited to a determination of whether the ALJ's

findings are supported by substantial evidence and whether the ALJ applied the proper legal

standards.  *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*,

109 F.3d 270 (6th Cir. 1997).  The Sixth Circuit states in *Brainard*, 889 F.3d at 681, that

"[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance

and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Further, "the decision of an ALJ is not subject to reversal, even if there is

substantial evidence in the record that would have supported an opposite conclusion, so long as

substantial evidence supports the conclusion reached by the ALJ."  *Key*, 109 F.3d at 273.

### IV.    Analysis

#### A.  Accuracy of the Hypothetical

The ALJ rendered findings favorable to Plaintiff at the first four steps of the disability

determination process.  Presumably, Plaintiff has no objections to those findings.  Accordingly,

the court will focus its attention on the ALJ's step-five determination that Plaintiff is capable of

performing a significant range of sedentary work notwithstanding her impairments.

The ALJ determined that Plaintiff had the following residual functional capacity (RFC):

> The claimant retains the residual functional capacity to perform sedentary work as
> defined by the regulations.  The claimant's ability to sit is further limited by her
> need to be allowed to alternate sitting and standing at will for five minutes every
> hour without leaving the work station.  She should avoid jobs that require walking
> on slippery or uneven surfaces.  She is able to occasionally squat, kneel, stoop,
> bend, and crawl.  She should avoid work environments requiring exposure to
> occupational hazards, such as working at unprotected heights, or around
> dangerous moving machinery.  She would require one day off per month.

(Tr. 23-24)  At the hearing the ALJ incorporated these limitations in a hypothetical question he

posed to the VE regarding Plaintiff's ability to engage in substantial gainful activity.  (Tr. 277)

In response to the hypothetical, the VE testified that a person with such limitations could work as

an information clerk (5,700 jobs), surveillance systems monitor (10,000 jobs), and receptionist

(2,000 jobs).  (*Id.*).

Where an ALJ poses a hypothetical question to a vocational expert (VE) that fully and accurately incorporates a claimant's physical and mental limitations, the expert's testimony in response thereto constitutes substantial evidence to support a finding that the claimant is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the expert's testimony cannot support such a finding.

Plaintiff cited no shortcomings in the hypothetical posed by the ALJ to the VE. Accordingly, Plaintiff has waived any such arguments. *Brickner v. Voinovich*, 977 F.2d 235, 238 (6th Cir. 1992) (arguments neither pled nor adequately raised or preserved in district court are waived; see also *Jones v. Shalala*, 10 F.3d 522, 525 n. 4 (7th Cir. 1993) ("Issues which are not discussed in the body of the brief are generally waived.") (citing *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 537 n. 4 (7th Cir. 1992)). In any event, the court finds that the VE's testimony in response to the hypothetical constitutes substantial evidence of the ALJ's determination that Plaintiff is not disabled. *Varley*, supra 820 F.2d at 779.

### B. Application of the Requirements of 20 C.F.R. § 404.1530

Plaintiff points out two issues in her brief. First, she argues that the ALJ ignored the requirement of 20 C.F.R. § 404.1530(a) requiring that treatment be "prescribed." Next, she argues that the ALJ's opinion failed to properly consider 20 C.F.R. § 404.1530(c)(3). With the respect to the first issue, Plaintiff mistakes the ALJ's opinion as to Plaintiff's failure to undertake the treatment options discussed by her doctor. Plaintiff specifically argues that the ALJ ignored the requirement of 20 C.F.R. § 404.1530(a) which states "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."

However, careful reading of the opinion indicates that the ALJ considered Plaintiff's refusal to undertake surgery as bearing only on her credibility with respect to her disabling pain. According to medical records, Plaintiff stated that she was not going to have a fusion procedure, as advised by Dr. Grain in March, 2002, because she felt "pretty darn good when she is not working and would like to avoid surgery if she could remain in this condition."  (Tr. 143) Therefore, Plaintiff did not believe that her pain justified her surgery.  Furthermore, Dr. Grain believed that her decision was appropriate.  He specifically stated that he "applaud[ed] her decision and support[ed] it."  (*Id.*)

Moreover, 20 C.F.R. § 404.1530(a) comes into play only if Plaintiff is determined to be disabled.  *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990) (benefits may be denied for a claimant's failure to follow prescribed treatment only if the claimant is found disabled).  As it was stated above, the ALJ found Plaintiff to not be disabled as she had the residual functional capacity to perform a significant range of sedentary work.  Therefore, Plaintiff was mistaken to argue that the ALJ ignored the requirement of 20 C.F.R. § 404.1530(a) regardless of whether or not the treatment was prescribed or recommended.

With respect to the second issue, Plaintiff argues that according to 20 C.F.R. § 404.1530(c)(3) claimant can decline surgery if a procedure previously had been performed with unsuccessful results and the same surgery is again being recommended for the same impairment. However, Plaintiff is mistaken with respect to the type pf procedure he has received and the type of procedure he was being offered.  As indicated by Dr. Carr, Plaintiff had previously obtained relief from a lumbar laminectomy with disc excision in June or July 2001 (Tr. 231, 235), but currently was being offered a different procedure (i.e. lumbar fusion) to address a separate

condition (degenerative disc disease).  (Tr. 235)  As Dr. Carr stated, [t]he degenerative process is

separate from the disc herniation. (*Id*.)

It is true that the ALJ comments within the opinion that the pain would have been

substantially alleviated by the lumbar fusion surgery.  (Tr. 20)  However, such statement seems

to be a mere passing comment and not within any of the findings.  The ALJ determined that

Plaintiff was not totally credible with respect to her alleged pain.  (Tr. 17, 20)

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility.  Nevertheless, an ALJ's assessment of a claimant's credibility must be

supported by substantial evidence."  *Walters v. Commissioner of Soc. Sec*., 127 F.3d 525, 531

(6th Cir. 1997).  With regard to a claimant's assertions of disabling pain, the Sixth Circuit has

established the following two-step test:

> First we examine whether there is objective medical evidence of an underlying
> medical condition.  If there is, we then examine:  (1) whether objective medical
> evidence confirms the severity of the alleged pain arising from the condition; or
> (2) whether the objectively established medical condition is of such severity that
> it can reasonably be expected to produce the alleged disabled pain.

*Walters*, 127 F.3d at 531.

ALJ's determination regarding Plaintiff's credibility is consistent with the medical

records.  In March, 2002, Dr. Grain stated that Plaintiff was feeling "pretty darn good" when she

was not working and wished to avoid surgery if she could remain in this condition.  (Tr. 43)  Dr.

Grain applauded and supported Plaintiff's decision to avoid surgery.  (*Id*.)   He further stated that

Plaintiff could perform sedentary work.  (Tr. 212)  During the hearing, Dr. Lorber, a board-

certified orthopedic surgeon, who testified as a medical expert at the hearing, noted that the fact

that Plaintiff chose not to have the procedure indicated that her pain was not as severe as she

claimed.  (Tr. 273-774)  Additionally, in May, 2002, Plaintiff admitted while filling out a daily

activities sheet that she fixed her own meals, cooked for her family, did her own shopping,

drove, did laundry and lawn-care, vacuumed, dusted, mopped, and washed dishes. (Tr. 72-75)

She further admitted that she was active in children's sports and school events one to two times a

week.  (Tr. 75)  Moreover, in the same month and year, Plaintiff's cousin filled out a daily

activities sheet for the claimant and confirmed the activities stated by the Plaintiff.  (Tr. 84-89)

       As indicated above, an ALJ's credibility determination is entitled to significant

deference.  *Walters*, 127 F.3d at 525.  Plaintiff has presented the court with no compelling reason

as to why the court should disregard the ALJ's credibility determination in this matter.  Based on

the foregoing, the court finds that there is substantial evidence in the record to support the ALJ's

conclusion that Plaintiff's testimony was not entirely credible.

### C.  ALJ's Rejection of Dr. Grain 2003 opinion

       In January, 2003, less than a year after Dr. Grain stated that Plaintiff could perform

sedentary work, Dr. Grain completed a "return to work" form indicating that Plaintiff could only

work 20 hours with other limitations such as no bending, no lifting or carrying more than five

pounds, no reaching, no pushing with arms or legs, no climbing ladders or stairs, and with an

availability of sit/stand option.  (Tr. 237)  This report apparently refers to a Physical Work

Performance Evaluation dated January 18, 2002, which concluded that Plaintiff was "incapable

of sustaining the sedentary level of work for an 8-hour day."  (Tr. 205, 209)

    The ALJ rejected Dr. Grain's opinion.  Such rejection was reasonable.  Dr. Grain failed to

explain why he changed his opinion.  See *Stanley v. Secreatary of Health & Human Services*, 39

F.3d 115, 118 (6th Cir. 1994) ("the ALJ did not err in declining to refer to [the treating

physician's] opinion because [the treating physician] originally opined that claimant could

perform sedentary work and did not provide any objective medical evidence to support his change of heart."). In addition, during the hearing, Dr. Lorber, testified that the record contained no reasonable explanation for this sudden diminishment in capacity. (Tr. 271) Furthermore, it is quite possible that a "return to work" form Dr. Grain filled out referred to Plaintiff being unable to perform the work of her former employer, not that she was unable to perform other work based on factors including her age, education, past work experience, and RFC. Moreover, Dr. Grain does not appear to have treated Plaintiff at the time he completed a "return to work" form. Dr. Grain's evaluation of Plaintiff's inability to work is inconsistent with and unsupported by other substantial evidence in the record, including his prior opinion that Plaintiff was capable of sedentary work. Accordingly, the ALJ did not err in rejecting Dr. Grain opinion.

### D.  Substantial Evidence

Though Plaintiff did not specifically argue in his motion for summary judgment that the ALJ's decision was not supported by substantial evidence, the court has reviewed the record in its entirety and concludes that there is substantial evidence in the record to support the ALJ's determination that Plaintiff is not disabled.

As the ALJ noted in his assessment of Plaintiff's credibility, Plaintiff's activities are inconsistent with her complaints. The report from Advantage Consulting in November, 2001 indicated that Plaintiff engaged in dishwashing, vacuuming, mopping, cooking, trash removal, and grocery shopping. (Tr. 183) At the hearing on May 17, 2004, Plaintiff testified that she usually drove about eight miles to town or fifteen miles to Sandusky to grocery shop. (Tr. 254) The previous January she went to Florida by van for about ten days. (Tr. 254-255) She further stated at the hearing as well as on the daily activities sheet she filled out on May 6, 2002, that she cooked and did laundry along with other household chores. (Tr. 73, 255) Moreover,

Plaintiff stated that she was not going to have surgery because she felt "pretty darn good when she is not working and would like to avoid surgery if she could remain in this condition."  (Tr. 143)  Dr. Grain supported her decision.  (Tr. 143)  Thus, neither Plaintiff nor Dr. Grain believed that Plaintiff's pain justified her surgery.

In addition, on January 7, 2000, Dr. Nafees Hasnie found no evidence of any muscular atrophy.  (Tr. 117-118)  See, e.g., *Crouch v. Secretary of HHS*, 909 F.2d 852, 857 (6th Cir. 1990) ("We find that the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion that claimant's allegation of severe disabling pain due to lower back disorder is not confirmed by the objective medical evidence.").  On November 1, 2000, when Plaintiff was seen by Dr. Ogboh, a CT scan of her lumbar spine revealed only a mild central L5-S1 disc herniation and an x-ray revealed only mild degenerative changes and mild levescoliosis in the lumbar spine.  (Tr. 124)  Subsequently, on November 29, 2000, Plaintiff had an MRI of the lumbar spine, which revealed a small, central disk herniation at L5-S1.  (Tr. 137)  On April 2, 2001, Dr. Elskens, a neurosurgeon, found that Plaintiff's straight leg raising was normal and that she was neurologically intact.  (Tr. 151-152)  On October 18, 2001, Dr. Raina, a physiatrist, noted that Plaintiff's examination of the back showed full range of motion and that the neurological exam showed normal strength in the lower extremities.  (Tr. 148)  He advised Plaintiff that she could work four to six hours a day and that he planned to consider advancing her to eight hours a day in two weeks.  (*Id*.)  On November 7, 2001, a functional capacity examination was performed at Advantage Consulting.  (Tr. 177-190)  The assessment indicated that Plaintiff could lift up to 30 pounds occasionally and 15 pounds frequently.  (*Id*.)

Further, the ALJ's RFC determination is consistent with the findings set forth in the Physical Residual Functional Capacity Assessment form prepared by a state agency medical

consultant on July 3, 2002.  (Tr. 217-227)  The medical consultant concluded that Plaintiff could

occasionally lift and/or carry up to 10 pounds, frequently lift and/or carry up to 5 pounds, stand

and/or walk for a total of at least 2 hours in an 8-hour workday sit for a total of about 6 hours in

an 8-hour workday; push and/or pull limited in lower extremities, and occasionally climbing,

balancing, stooping, kneeling, crouching, crawling.  (*Id*.)

Moreover, on June 12, 2003, Plaintiff saw Dr. Carr, a neurosurgeon, for an independent

medical examination.  (Tr. 272; see Tr. 229-36)  Physical examination revealed slight diminution

in her right Achilles reflex, no sensory loss, and atypical straight leg raising.  After reviewing the

December 21, 2001 MRI, Dr. Carr stated that there was no evidence of disk herniation.  (*Id*.)

Accordingly, the VE's testimony constitutes substantial evidence to support the ALJ's

finding that Plaintiff is not disabled.  *Varley v. Secretary of Health and Human Services*, 820

F.2d 777, 779 (6th Cir. 1987) (substantial evidence to support finding that claimant is not

disabled may be produced through reliance on testimony of vocational expert in response to

hypothetical question that accurately portrays claimant's impairments).

### V.       Conclusion

For the reasons stated above, the court recommends that Plaintiff's motion for summary

judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that

the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1 (d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.


                     s/Virginia M. Morgan
                     VIRGINIA M. MORGAN
                     UNITED STATES MAGISTRATE JUDGE


Dated:    December 8, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on December 8, 2005.

                     s/Jennifer Hernandez
                     Case Manager to
                     Magistrate Judge Virginia M. Morgan