**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LINDA ENGLISH,

        Plaintiff,

v.     CIVIL CASE NO. 05-71575
      HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

**OPINION AND ORDER ADOPTING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

Plaintiff Linda English brings this action under 42 U.S.C. § 405(g) challenging a final decision of defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under sections 216(I) and 223 of the Social Security Act. The case was referred to Magistrate Judge Virginia M. Morgan pursuant to 28 U.S.C. § 636(b)(1)(B) to review cross-motions for summary judgment. The Magistrate Judge issued a Report and Recommendation ("R&R") on December 8, 2005, recommending that Plaintiff's motion for summary judgment be denied, and that Defendant's Motion for Summary Judgment be granted.

On April 10, 2002, Plaintiff filed an application for DIB alleging an onset date of December 4, 2000. (Tr. 52-54). Plaintiff alleges that she became disabled due to recurrent disc herniation, marked endplate reaction, and nerve damage. (Tr. 59). After the initial denial of her application on July 15, 2002, Plaintiff requested an administrative hearing. On October 29,

2004, Administrative Law Judge ("ALJ") Peter C. Americanos found that Plaintiff was not disabled because her medically determinable impairments did not meet or medically equal one of the listed impairments in the regulations, her claimed limitations were not fully credible, and because Plaintiff had the residual functional capacity ("RFC") to perform a significant range of sedentary work notwithstanding her physical limitations. (Tr. 23-24). On February 25, 2005, the Appeals Council denied review. (Tr. 5-7). Plaintiff filed for judicial review of the final decision on April 2, 2005.

In her R&R, the Magistrate Judge found: that by not raising any objections to the hypothetical questions, Plaintiff waived any argument that the hypothetical questions the ALJ asked the Vocational Expert ("VE") was inadequate; that that the VE's testimony in response to the relevant hypothetical question constitutes substantial evidence of the ALJ's determination that Plaintiff is not disabled; that the ALJ did not improperly ignore the mandates of 20 C.F.R. § 404.1530(a) because Plaintiff is not disabled; that the ALJ's determination regarding Plaintiff's credibility was supported by substantial medical evidence; and, that overall, the ALJ's decision was supported by substantial evidence in the record.

On December 21, 2005, Plaintiff filed Objections to the R&R, contending that the Magistrate Judge failed to take into consideration all three hypothetical questions posed to the VE, that the Magistrate Judge incorrectly applied 20 C.F.R. § 404.1530(a) to discredit Plaintiff's testimony, that the Magistrate Judge failed to comprehend the nature of Plaintiff's impairment, and that the Magistrate Judge's finding that the ALJ's decision was supported by substantial evidence is not, in fact , supported by the record.

For the reasons stated below, the Court ADOPTS the Magistrate Judge's R & R.

**II.	STANDARD OF REVIEW**

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Id. The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate judge. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

Judicial review in a social security appeal is limited to determining whether there is substantial evidence supporting the ALJ's decision and whether the judge applied the correct legal standards in reaching that decision. Elam v. Comm'r of Soc. Sec., 348 F.3d 124,125 (6th Cir. 2003), 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If substantial evidence supports a denial of benefits, that decision is not subject to reversal, even if the reviewing court determines that substantial evidence supports a contrary decision. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration the entire record, including "whatever in the record

fairly detracts from its weight." Mullen, 800 F.2d at 545 (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1971)). However, the court may not review the evidence *de novo*, make determinations of credibility, or weigh the evidence. Brainerd v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Consequently, the substantial evidence standard accords "considerable latitude to administrative decision makers," as "[i]t presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." Mullen, 800 at 545 (citations and internal quotations omitted).

### III. STATEMENT OF FACTS

At the hearing in May 2004, Plaintiff testified that she hurt herself at work a couple of months before she saw her treating physician on December 4, 2000. (Tr. 248-49). She was diagnosed with a disc herniation, and received spinal injections to relieve the back pain. However, she suffered an allergic reaction to the medicine, and subsequently had surgery in July 2002, in an attempt to correct the problem. (Tr. 249-50). After the surgery, she returned to work but stopped due to back pain. (Tr. 250). In an effort to return to work, Plaintiff underwent work hardening and physical therapy. As a result, she was able to work again. Id. However, she once again stopped working due to pain and difficulty sleeping. Plaintiff testified that a doctor had recommended a fusion procedure. (Tr. 251). However, she decided that it was better to put such a procedure off if she could, and that was also the position of her neurosurgeon, Dr. Grain. Id. She further testified that she wanted to delay the procedure because it was major surgery, and she did not know if it would be 100 percent effective. Id.

Plaintiff testified that she took Lortab for pain and the muscle relaxer Soma. (Tr. 251-52). She testified that, on a scale from one to ten, her pain average a "six" but was a "ten" at

night. (Tr. 252). She could sit for about six minutes and then had to move around; stand for about 10-15 minutes; and walk for 15-20 minutes or about three city blocks. Plaintiff testified that she could lift less than 5 pounds without pain, using both arms and hands. (Tr. 252-53). The pain radiated to her legs. (Tr. 253). Plaintiff testified that she drove about eight miles to town or fifteen miles to Sandusky to grocery shop. (Tr. 254). The previous January she went to Florida by van for about ten days. (Tr. 254-55). She was able to take care of her house most of the time. (Tr. 255). She cooks, does laundry, and other household chores. She did exercises learned in physical therapy. (Tr. 256).

Plaintiff testified that when she returned to work after her surgery she had a desk job, but could not sit more than a half hour at a time during her four-hour days due to pain in her back and neck. (Tr. 260). When she returned home after work, she had to lie down on the couch due to her pain. (Tr. 261).

Arthur Lorber, a board-certified orthopedic surgeon, testified as the state medical expert ("ME"). (Tr. 265). He stated that on August 10, 2000, Plaintiff sustained an injury at work to her lower back, and was seen by Dr. Ogboh in November 2000, when a CT scan of her lumbar spine revealed a mild central disc herniation at L5-S1, and routine x-rays showed mild leviscoliosis and mild retrolisthesis of L5-S1. (Tr. 123-24, 269-70). Subsequently, in November 2000, she had an MRI of her lumbar spine, which revealed a small, central disc herniation at L5-S1. (Tr. 137, 270). She saw Dr. Elskens, a neurosurgeon, by self-referral on April 20, 2001. (Tr. 270; see Tr. 151-52). Dr. Elskens diagnosed mechanical back pain and indicated that Plaintiff might need a fusion. However, she saw Dr. Grain, another neurosurgeon, and, on July

5

2, 2001, she underwent a laminectomy and discectomy for a herniated disc at L5-S1 without a fusion. (Tr. 171-76, Tr. 270).

Dr. Lorber noted that on October 18, 2001, Plaintiff saw Dr. Raina, her physiatrist, and he advised that she could return to work on limited duties, working six hours a day and lifting up to five pounds. (Tr. 148, Tr. 270). He planned to consider advancing her to eight hours a day in two weeks. (Tr. 148). On November 7, 2001, a functional capacity examination was performed at Advantage Consulting. (Tr. 177-90, Tr. 270-71). The assessment indicated that Plaintiff could lift up to 30 pounds occasionally and 15 pounds frequently. (Tr. 271). Another MRI was performed in December 2001, and was interpreted as revealing a small central disc herniation. (Tr. 271). Dr. Lorber testified that the December MRI indicated no change from the MRI in November 2000. (Tr. 192, Tr. 271). Another functional capacity evaluation, performed on January 18, 2002, indicated that Plaintiff's level of performance undertaking specific tasks had dropped since the previous assessment in November 2001. (Tr. 205-09, Tr. 271). The ME testified that the January 2002, assessment was not a reliable indicator of Plaintiff's ability to work because there was no explanation as to why there was diminished capacity.

On March 5, 2002, Plaintiff saw Dr. Elskens again, and he stated that he had reviewed the MRI results and indicated that Plaintiff did not have a recurrent disc herniation; however, he advised surgery for a fusion procedure. (Tr. 210-11, Tr. 271). Dr. Lorber noted that Plaintiff refused such surgery. (Tr. 271). On March 14, 2002, Plaintiff saw Dr. Grain, and he stated that Plaintiff could perform sedentary work, although he also stated she made multiple attempts to return to work with an increase in symptomology. (Tr. 212, Tr. 271). At that time, Dr. Grain

noted that Plaintiff had been advised to have a fusion procedure, but she stated that she felt "pretty darn good when she is not working and would like to avoid surgery if she could remain in this condition." (Tr. 143). Dr. Grain stated that he "applaud[ed] her decision and [would] support it." (Tr. 143).

On September 3, 2002, Plaintiff returned to see Dr. Reina, the physiatrist, and complained of lower back pain, radiating down her leg to her right foot. (Tr. 243). He advised more limited duties: no lifting more than 5 pounds, no working more than 4 hours a day. Id.

Plaintiff next saw Dr. Rengachary, another neurosurgeon, in September 2002 at the request of Dr. Grain. (Tr. 241-42). He reviewed her MRI and stated that there was narrow disc space at L5-S1 with postoperative changes, but he did not mention recurrent or residual disc herniation. Dr. Rengachary stated that Plaintiff would require a fusion procedure at L5-S1 because of post-laminectomy syndrome. (Tr. 242). Plaintiff stated that she was undecided about having such a procedure. Dr. Lorber pointed out that Plaintiff saw Dr. Grain again in January 2003, and he advised that Plaintiff could return to work on January 8, 2003, but could only work 20 hours per week, with no lifting over five pounds, no bending, no reaching, a sit/stand option, and the option to lie down in a recliner during the day. (Tr. 237, Tr. 272).

On June 12, 2003, Plaintiff saw Dr. Carr, a neurosurgeon, for an independent medical examination. (Tr. 229-36). She complained of lower back pain radiating to her legs. At the time of the exam, she was using a Duragesic patch and a back brace. Id. The physical examination revealed slight diminution in her right Achilles reflex, no sensory loss, and atypical straight leg raising. Id. Dr. Carr reviewed the December 2001 MRI and stated that there was no evidence of disc herniation. Id. He advised limited duties (four hours a day with no lifting more

7

than five pounds, no bending, and a sit/stand/walk option) on a permanent basis. Id.

Dr. Lorber testified that Plaintiff did not meet the regulation's requirements to be considered disabled. (Tr. 272). He also thought that she was capable of performing sedentary work with a sit/stand option, noted that a fusion had been recommended on a number of occasions, and indicated that the fact that she chose not to have the procedure indicated that her pain was not as severe as she claimed. (Tr. 273-74). He also opined that the fusion procedure was likely to alleviate back pain to a considerable degree and increase functionality even if it did not eradicate all pain. (Tr. 274).

The VE, Jennifer Tureck, testified that Plaintiff's past relevant work as a stock and delivery person was semi-skilled heavy work, her work as a cleaner was unskilled medium work, her work as a waitress was semi-skilled light work, and that her work as a salad server was semi-skilled light work. (Tr. 276-77). The ALJ posed a hypothetical question about an individual with Plaintiff's vocational profile, who could perform sedentary work, but: must be allowed to alternate sitting and standing at will for five minutes per hour without leaving the work station; could do no more than occasional bending, squatting, kneeling, stooping, and crawling; could not work at unprotected heights, around dangerous moving machinery; could not walk on slippery or uneven surfaces; and, the individual would also have to be able to take twelve days off per year. (Tr. 277). The vocational expert testified that such an individual could perform work as an information clerk (5,700 jobs); surveillance systems monitor (10,000 jobs); and receptionist (2,000 jobs). Id.

The ALJ found that Plaintiff met the disability insured requirements of the Act on her alleged onset date, through March 31, 2004, her date last insured, and that she had not engaged

in substantial gainful activity since her alleged onset date. (Tr. 23). Plaintiff had severe back problems, but she did not have any impairment or combination of impairments that met or equaled the criteria of an impairment in the Listing of Impairments. He found that Plaintiff's claims of severe pain were not fully credible, that Plaintiff had the RFC to perform a range of sedentary work that allowed her to alternate sitting and standing at will for five minutes every hour without leaving the work station. (Tr. 23-24). In addition, the ALJ found that she should avoid jobs requiring walking on slippery or uneven surfaces, or work in environments requiring exposure to occupational hazards, such as working at unprotected heights or around dangerous moving machinery; that she could only occasionally squat, kneel, stoop, bend, or crawl; and, that she required one day off per month. (Tr. 24). The ALJ found that although Plaintiff was unable to perform any past relevant work, using the Medical-Vocational Guidelines as a framework and the testimony of the VE, he determined that Plaintiff could perform a significant number of jobs in the economy and was, therefore, not disabled.

## IV.     ANALYSIS

In order to establish a compensable disability under the Social Security Act, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A). The claimant bears the ultimate burden of establishing a disability within the meaning of the Social Security Act. Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993).

Disability claims are evaluated through a five-step sequential process. 20 C.F.R. §

404.1520.  See also Kirk, 667 F.2d at 529.  The burden of proof to show a disability is on the claimant through the first four steps of the process.  If a claimant meets this burden, the fifth step shifts the burden to the Commissioner.  Preslar v. Sec'y of Health and Human Serv., 14 F.3d 1107, 1110 (6th Cir. 1994).  The first step of the process examines whether the claimant is currently engaged in substantial gainful activity.  If the claimant is so engaged, she is not disabled under the guidelines.  The second step examines whether the claimant has a severe impairment which significantly limits her ability to perform work-related functions.  Id.  If a severe impairment is found, the third step requires comparison of the impairment to those impairments listed in Appendix I, 20 C.F.R. § 404, Subpt. P (1981), to determine if, on the medical evidence alone, the claimant is disabled.  Id.  If the claimant is not disabled under the third step, the fourth step requires a determination of whether the claimant can perform relevant past work.  If claimant cannot perform relevant past work, the fifth step shifts the burden to the Commissioner to establish that the claimant has transferable skills which enable her to perform other work in the national economy.  Id.

      The ALJ rendered findings favorable to Plaintiff at the first four steps of the disability determination process, thus, the question before the Court is whether Plaintiff is disabled under step five of this analysis; that is, whether Plaintiff retains the RFC to perform other work existing in significant numbers in the national economy.  The ALJ found that, although Plaintiff did not possess the RFC to perform her past relevant work, she retained the RFC to perform a significant range of sedentary work because her claimed level of incapacity was not wholly credible.  In making his credibility determination, the ALJ looked to Plaintiff's refusal to undergo recommended, although not prescribed, back surgery, a November, 2001, physical capacities

evaluation in which Plaintiff's performance suggested that maximal effort was not provided, and Plaintiff's testimony regarding the daily activities she was able to perform.

Plaintiff's first objection to the Magistrate Judge's R&R entails the Magistrate Judge's failure to take into consideration all three hypothetical questions posed to Plaintiff.  Plaintiff, in essence, argues that the Magistrate Judge erred in finding that the first hypothetical posed by the ALJ to the VE properly encompassed Plaintiff's limitations.  Plaintiff argues the ALJ's hypothetical was flawed because it was not supported by all the relevant evidence, and that the latter two hypothetical questions adequately reflected Plaintiff's condition.  "If the Secretary seeks to rely on [vocational expert (VE)] testimony to carry his burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant."  Felisky v. Bowen, 35 F.3d 1027, 1035-36 (6th Cir. 1994) (citations omitted).  The first hypothetical question accurately described Plaintiff in all significant relevant respects.  The ALJ asked the following hypothetical question to the VE:

> I'll ask you to assume a hypothetical individual of the Claimant's age, education and work experience, who can do work on the sedentary level, who has the following limitations: this individual must be allowed to alternate sitting and standing at will for five minutes per hour without leaving the workstation.  That individual can do no more than occasional bending, squatting, kneeling, stooping, and crawling.  That individual must avoid work at unprotected heights, around dangerous moving machinery.  That individual must avoid work - walking - that individual must avoid walking on slippery or uneven surfaces.  Finally, that individual must be able to take 12 days off per year.

(Tr. 277).  The vocational expert testified that such an individual could perform work as an

11

information clerk (5,700 jobs), surveillance systems monitor (10,000 jobs), and receptionist (2,000 jobs).  Id.  The ALJ then went on to ask how many jobs would be available to such a person if that person were required to take an unscheduled break, or if that person were required to lie down and rest during the day.  (Tr. 278-79).  The VE testified that all jobs would be eliminated if either of those requirements were added.  Id.  The ALJ determined that the first hypothetical accurately described Plaintiff in all significant relevant respects because her claimed level of disability was not fully credible.  The ALJ listed numerous reasons, supported by the record, why Plaintiff was not wholly credible.  (Tr. 18-21).  Therefore, there is substantial evidence to support the ALJ's credibility determination, and thus, the first hypothetical question posed to the VE to determine if Plaintiff was able to perform other work in the national economy, accurately described Plaintiff in all significant, relevant respects.

Plaintiff also claims that the Magistrate Judge, in effect, rewrote 20 C.F.R. § 404.1530(a) to state that if a claimant refuses surgery, the ALJ will deny benefits because the claimant lacks credibility.  However, nothing in the Magistrate Judge's R&R suggests such a standard was considered or applied.  Rather, the Magistrate Judge determined that the ALJ's findings regarding Plaintiff's refusal to undergo a second back surgery negatively impacted her credibility.  Thus, the ALJ did not ignore the mandates of § 404.1530(a).[1]  (Tr. 20, R&R at 6).  Specifically, the ALJ stated:

> For all the foregoing reasons, I find that the claimant's allegations of debilitating,

---

[1] "(a) What treatment you must follow.  In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."  However, in order to get benefits, the claimant must also first be determined to be disabled under the regulations.

> disabling pain and substantial functional limitations due to low back pain are not supported by the total evidence of record, including objective clinical and radiological findings and, in particular, the claimant's repeated refusal of recommended treatment. Accordingly, I find the claimant's testimony on the issue of total disability to be not entirely credible.

(Tr. 20). Moreover, the Magistrate Judge found that the ALJ did not misapply § 404.1530(a) because that section is only relevant if the claimant is first found to be disabled; i.e., if the claimant is disabled, benefits can be denied if the claimant does not follow physician prescribed treatment that can restore the claimant's ability to work. 20 C.F.R. § 404.1530(a), see McKnight v. Sullivan, 927 F.2d 241 (6th Cir. 1990). Plaintiff claims that her benefits were denied because she did not undergo recommended, as opposed to prescribed, surgery in contravention of § 404.1530(a). However, this is not the case. Plaintiff's claims were denied, in part, because her level of incapacity was found not to be credible. Plaintiff was not, however, denied benefits solely because she did not elect to undergo recommended surgery. Rather, a number of factors weighed against Plaintiff's credibility, including: clinical examinations, radiological test results, physical evaluation tests that suggested Plaintiff's claimed level of disability was not fully credible, and Plaintiff's refusal to undergo recommended surgery. Therefore, the Magistrate Judge did not misapply 20 C.F.R. § 404.1530 to deny Plaintiff's claim based on her refusal to undergo recommended surgery.

Next, Plaintiff objects to the Magistrate Judge's finding that Plaintiff suffers from two different back conditions. Plaintiff argues that the Magistrate Judge failed to comprehend the nature of Plaintiff's impairment. Plaintiff argues that she does not suffer from two different impairments; rather, she suffers from one impairment: severe back pain that was not alleviated by the first surgery. The Court disagrees with Plaintiff's contention that the Magistrate Judge

13

failed to comprehend the nature of Plaintiff's impairment.  The Magistrate Judge noted that Plaintiff suffered from two different medical conditions, both of which contributed to her alleged disabling back pain.  Moreover, Plaintiff advances no argument why this alleged misapprehension of Plaintiff's impairment was erroneous, how it negatively affected the Magistrate Judge's analysis, or how finding that the basis for Plaintiff's claim as "back pain" would result in a finding that Plaintiff was disabled.  Plaintiff appears to argue that because the surgery did not sufficiently relieve the impairment, that she is disabled.  This argument is untenable.  Plaintiff suffered from two different medical conditions that caused her back pain: the disc hernia that was surgically treated, and degenerative disc disease.  This is not a case where, "[s]urgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment."  20 C.F.R. § 404.1530(c)(3).  Rather, in this case, surgery was previously performed with mixed results, and a new impairment materialized for which a different surgical procedure was recommended.  Therefore, the Magistrate Judge did not err in noting that Plaintiff had two different back ailments.

Finally, Plaintiff objects to the Magistrate Judge's finding that the ALJ's decision was supported by substantial evidence is not, in fact, supported by the record.  Plaintiff argues that the ALJ and the Magistrate Judge put undue weight on Plaintiff's ability to engage in activities of daily living.  The Magistrate did not rely solely on Plaintiff's ability to perform daily activities to determine if the ALJ's findings were supported by substantial evidence; rather, the Magistrate Judge found that the record as a whole supported the ALJ's determination that Plaintiff was not disabled.  The Magistrate Judge found that the ALJ's credibility assessment was supported by substantial evidence because Plaintiff's daily activities, as well as her comment to her treating

neurosurgeon that she felt "pretty darn good when not working," (Tr. 143) were inconsistent with her complaints. The Magistrate Judge also found that the objective medical evidence, including a functional capacity examination and numerous physical examinations by Plaintiff's own doctors[2] did not support Plaintiff's claim of total disability. Finally, the Magistrate Judge found the ALJ's RFC determination was consistent with the findings set forth in the state's Physical Residual Functional Capacity Assessment. After reviewing the entire record, the Court agrees with the both the ALJ and Magistrate Judge, and finds that the denial of Plaintiff's claims for benefits is supported by substantial evidence.

Having conducted a *de novo* review of the portions of the R&R to which Plaintiff objects, the Court finds that the denial of Plaintiff's claims for benefits is supported by substantial evidence.

IV.     **CONCLUSION**

Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

                                         s/Marianne O. Battani
                                         MARIANNE O. BATTANI
                                         UNITED STATES DISTRICT JUDGE


DATED: **March 1, 2006**

---

[2] The ALJ rightly rejected a physician's opinion that Plaintiff could not work because the same physician originally opined that Plaintiff could perform sedentary work and did not provide any objective medical evidence to support the change of opinion. See Stanley v. Sec'y of Health & Human Svcs., 39 F.3d 115, 118 (6th Cir. 1994).

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed to Michael McNamee, and Janet Parker on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt<br>
CASE MANAGER